**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**TARA RULE,**

**Plaintiff,**

**-against-**

**JONATHAN BRAIMAN, DONNA KIRKER,**
**LISA WEST, CHRISTINE CALISTRI,**
**ALBANY MED HEALTH PARTNERS (SYSTEMS),**
**GLENS FALLS HOSPITAL, SARATOGA HOSPITAL,**
**MALTA MED EMERGENT CARE**

**Defendants.**

**Index no.** l:23-cv-1218 BKS/CFH

Dated: 02/11/2024

Tara Rule
*Pro se*
ruleartsandproductions@gmail.com
PO Box 123 Round Lake NY

12151

### PLAINTIFFS RESPONSE TO "DEFENDANT JONATHAN BRAIMAN, M.D.'S MOTION TO DISMISS AMENDED COMPLAINT"

TO:
**BARCLAY DAMON,LLP**
**Attorneys for Defendant, Jonathan Braiman**
**80 State Street**
**Albany, New York 12207 mimurphy@barclaydamon.com**

CC:
**BOND, SCHOENECK & KING, PLLC**
**Attorneys for Defendants,**
**Donna Kirker, Albany Med Health Partners (Systems), Glens Falls Hospital, Saratoga Hospital, and**
**Malta Med Emergent Care,**
**22 Corporate Woods Boulevard Suite 501**
**Albany, New York 12211 mbillok@bsk.com**

**Karen A Butler**
**Attorneys for Defendants,**
**Lisa West and Christine Calistri**
**6 Tower Place**
**Albany, New York 12203**
**(518) 465-3553 butler@inoscllp.com**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**

Rule 12(b)(6)                                                                          5
Second Circuit "Close Nexus" Test                                                     6
Section 1983                                                                          6
Section 1557 of the Affordable Care Act                                              7
Title IX                                                                              8
Age Discrimination Act of 1979                                                       8
Amercians With Disabilities Act                                                      9
Title II Civil Rights Act                                                            10
Patient Self Determination Act                                                       14
18 U.S.C. § 1035                                                                     14
CPLR § 3012-a                                                                        17

**CASES:**

*Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007*)                             5
*Iqbal, 556 U. US.at 678-80*
5
*Rendell-Baker v. Kohn,* 457 U.S. 830 (1982),
6
*Jackson v. Metropolitan Edison Co.,* 419 U.S. 345 (1974),                          6
*Golden v. Zwickler*, 394 N.Y.S.2d 827 (N.Y. App. Div. 1977),                      6
*Blum v. Yaretsky, 457 U.S. 991 (1982)*                                            6
*McGugan v. Aldana-Bernier,* 752 F.3d 224, 228 (2d Cir. 2014),
6
*Hogan v. A.O. Fox Memorial Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009)            6
*Weinreb v. Xerox Bus. Servs., LLC,* 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018).      7
*Hargrave v. Vermont (1995)*                                                        12
*Association for Disabled Americans v. Florida International University Board of Trustees (2002)*   12
*Duvall v. County of Kitsap* (2002)                                                 12
*Bay Area Addiction Research and Treatment, Inc. v. City of Antioch* (2004)         13
*United States v. New York City Transit Authority (2005)*                           13
*United States v. Louisiana (2008)*                                                 13
*Lane v. Kitzhaber (2012)*                                                          13
*Delaney v. Cade (5th Cir. 1994)*                                                   13
*Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)*                              17
*Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993)*                            17
*Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983)*                   17
*Kinowski, 2023 U.S. Dist. LEXIS 131663 at *41,*                                    18
*Francis v. Kings Park Manor, Inc., 992 F.3d 67, 81 (2d Cir. 2021)*                 18
*Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000)*                                19

**PRELIMINARY STATEMENT**                                                           3

**RESPONSE TO : STATEMENT OF FACTS/RESPONSE TO PLAINTIFF'S UNSUPPORTED
ALLEGATIONS**                                                                        3

**RESPONSE TO : ARGUMENT**

**I.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST DR. BRAIMAN**    5

**Legal Standard**    **5**
**Dr. Braiman Not a State Actor**    **6**
**Claim Under the Affordable Care Act**    **7**
**Sex Discrimination**    **8**
**Age Discrimination**    **9**
**Disability**    **10**
**Plaintiff's Alleged Damages Are Not Recoverable Under the ACA**    **11**
**No Claim Under Title II of the Civil Rights Act**    **12**
**No Claim Under the Age Discrimination Act of 1975**    **13**
**No Claim Under the Patient Self-Determination Act**
**13**
**No Claim Under the Federal Penal Code**    **13**
**No Claim Under the ADA**
**14**
**No Claim for Negligence**    **14**
**No Claim for Negligence Per Se**    **14**
**No Claim for Medical Malpractice**
**15**
**No Claim for Intentional Infliction of Emotional Distress**    **17**
**No Claim for Negligent Infliction of Emotional Distress**    **18**

**i. ii. iii. iv.**

**RESPONSE TO : III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL**
**JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**
    **20**

**CONCLUSION**    **20**

## PRELIMINARY STATEMENT:

Plaintiff, a pro se litigant, has thoroughly outlined her factual allegations in her amended complaint and asserts that she has met the criteria for stating the claims for her causes of action. Additional documentation and exhibits have been submitted with the plaintiff's response to the defense's motion to dismiss to further validate her claims. The defendants have failed to provide any documentary evidence or any relevant documentation to validate their claims regarding dismissal and have failed to provide the court with any claims that the factual allegations submitted by the plaintiff are false. In addition to the attached exhibits that refute the defense's claims, plaintiff asserts that discovery and depositions will further validate her factual allegations.

Plaintiff has attached a transcription of the recordings of her appointment with Dr. Jonathan Braiman (RESPONSE BRAIMAN - Exhibit A) as well as the original recordings (RESPONSE BRAIMAN - Exhibit B) with metadata attached to prove that this recording is real and undoctored. (RESPONSE BRAIMAN - Exhibit C) Originally submitted videos were combined into 2 videos as opposed to 3 separate files, but each original video is now its own media exhibit with metadata included. Plaintiff asserts that if necessary, additional metadata can be requested from Apple to prove that these are 100% original, undoctored media files.

Plaintiff reinstates that she is a pro se litigant, and respectfully requests a degree of leniency from the court

in order to provide her the right to a fair hearing. Plaintiff respectfully asks the court to consider the extensive studying, time and effort the plaintiff has put forth to ensure the court's valuable time is not wasted and that protocol is properly followed pursuant to local rules.

## RESPONSE TO : "DEFENDANTS STATEMENT OF FACTS/RESPONSE TO PLAINTIFF'S UNSUPPORTED ALLEGATIONS"

Defendants Claim : "On August 31, 2022, Dr. Braiman saw Plaintiff for a neurology consult. Ex. B, BRAIMAN 000025. It was noted that she had a history of migraine which was "well controlled."

Plaintiff asserts that, as evidenced in Dr. Braimans notes in the plaintiffs medical records, which have been submitted as exhibits by the defendants, that Jonathan Braiman was negligent in his failure to note the plaintiffs complaints of persistent cluster headaches, which are different from migraines. [1] and require different treatment methods. It is also clear that these cluster headaches were not "well controlled", as further documented by Dr. Braiman's notes, *"Since last seen she had fluctuating migraine headache for 2 weeks in early August and then from 25 August to September 9, but now resolved. She has had no headache in the last 5 days.Prior to 3 months ago she was experiencing headaches 2-3 times per month, not in need of preventative treatment. She now wishes to go on preventative treatment for migraine. At other times during her life with more frequent migraine she was initiated on Topamax at one point and then amitriptyline at another point. Neither were well- tolerated and she does not recall being on the[m] more than a month."*

Plaintiff asserts she was not seeking treatment for migraine, but for cluster headaches.

In the recordings,  (RESPONSE BRAIMAN - Exhibit A)  Plaintiff can be heard asking Dr. Braiman, "*so if I was through menopause - would these treatments be very effective for cluster headaches?*" to which Dr. Braiman replied, "*Yeah, they would be.*"

This reinforces the plaintiffs position that she was seeking treatment for cluster headaches, not migraines, despite what Dr. Braiman's notes indicate. This discrepancy is negligent at best, and intentionally deceptive at worst.

Additionally, plaintiff brings attention to RESPONSE BRAIMAN - Exhibit D, which are **sworn statements sent in by the defendant to the Division of Health and Human Services** regarding the allegations of discriminatory actions, **where Dr. Braiman repeatedly acknowledges that the plaintiff was seeking treatment for cluster headaches, not migraines. (**RESPONSE BRAIMAN - EXHIBIT D)

Defendants claim: "*Plaintiff did not treat with Dr. Braiman for suicide or cluster headaches. Compl. ¶ 43. Rather, she was treated for "fluctuating migraine headaches" which had resolved as of the September 14, 2022 appointment.*"

This claim is plainly false as evidenced by RESPONSE BRAIMAN - Exhibit A, the recordings, and RESPONSE BRAIMAN -  Exhibit D, the sworn statement sent in by Jonathan Braiman. Plaintiff asserts that it makes no sense that she would make an appointment to discuss treatment options for a condition that had been allegedly "resolved" as alleged by the defendant. Plaintiff asserts that this discrepancy between the recordings, the notes in the plaintiffs medical records, and the sworn statements sent in by the defendant to the NYS Division show a concerning lack of consistency with regard to the defendants narrative and implies that the defendant has changed their side of the story.

Defendants claim: "*This is completely absent from not only the clearly edited audio Plaintiff attached to her motion, but also her medical record.*"

Plaintiff asserts that the audio has not been altered in any way regarding the contents of the conversation. Plaintiffs EXHIBIT U (Recordings, Braiman)  of her amended complaint utilized automatically generated subtitles in order to help assist

---

[1] The intense pain of a cluster headache attack is sometimes described as being worse than passing a kidney stone—or even childbirth. Often confused with migraine, a type of headache disorder that can also cause serious discomfort, cluster headache is a relatively rare condition that occurs in about 1 in 1,000 to 1 in 5,000 people, explains Emmanuelle Schindler, MD, PhD, a Yale Medicine neurologist.
"A Yale Medicine neurologist explains cluster headache and how it differs from migraine and tension-type headaches."
https://www.yalemedicine.org/news/cluster-headaches

the court with hearing the audio. Additionally, the plaintiff used the same program to equalize the volume of both the plaintiff and the defendant, as the defendant sounded way too quiet and the plaintiff sounded way too loud. This was a decision made by the plaintiff in order to make the reviewing of evidence as easy as possible for the court. Plaintiff fast forwarded through long silences of dead air, which will be reflected in the submitted RESPONSE BRAIMAN - EXHIBIT B

For good measure, plaintiff has included the original recording as RESPONSE BRAIMAN - Exhibit B of this document, as well as a transcript RESPONSE BRAIMAN - Exhibit A  of this document, and the metadata from the original videos to prove that these videos are 100% authentic (RESPONSE BRAIMAN -Exhibit C)

Plaintiff asserts that Jonathan Braimans records do not align with the narrative and reason for the appointment, the recordings, where plaintiff confirmed that the treatments being discussed were for cluster headaches, and the defendant's previous sworn statement to the state of New York. (RESPONSE BRAIMAN - EXHIBIT D)

Defendants claim: *furthermore, Plaintiff alleges that she was prescribed medication "without her consent" which could have resulted in injury or death. Compl. ¶ 71. Plaintiff was prescribed Aimovig at the September 14, 2022 appointment. At that appointment, she had an opportunity to discuss, or reject, medications. Ex. B, BRAIMAIN 000015."*

Plaintiff asserts that she was prescribed Aimovig without her kno]wledge or consent. Jonathan Braiman refused to discuss the risks and benefits of the medication he ultimately prescribed and refused to discuss the admittedly safer and more effective treatments that had the potential to cause birth defects. This claim from the defendant is  plainly false. Plaintiff asserts that discovery and the deposition of Jonathan Braiman will further prove her factual allegations.

RESPONSE TO : **ARGUMENT I. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AGAINST DR. BRAIMAN**

*A. Legal Standard*
To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"

Plaintiff asserts that she has sufficiently articulated prima facie claims where appropriate, and has provided the court with sufficient documentation to support her factual allegations.

Defendants reference to *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)* regarding the plaintiff's failure to state a claim "on its face" must also fail, as the plaintiff has effectively stated her claims and causes of action under each statute in her causes of action with extensive documentation to support her causes of action. Due to the detailed factual allegations, extensive documentation and exhibits provided by the plaintiff, and a failure by the defense to provide any documentary evidence that refutes the claims of the plaintiff, their motion to dismiss must fail.

Defendants reference to *Iqbal, 556 U. US.at 678-80., "For a complaint to survive a motion to dismiss, the factual allegations must "cross the line from conceivable to plausible"*-
The Plaintiff has done much more than simply state an unfounded claim based on hearsay or her perspective, but has provided extensive documentation including recordings, medical records, and documents to support each of her causes of action and has met the criteria for stating a claim under each cause of action. Plaintiff reinstates that additional exhibits have been submitted to further validate her position.

*"The Defendant moves to dismiss the complaint, contending that it fails to meet the plausibility standard established by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).*
Plaintiff asserts that upon careful examination of the facts and the applicable legal standards, it becomes evident that the Plaintiff has set forth sufficient factual matter to state a plausible claim for relief :

**I. Plausibility Standard:**
*A. The Rule 12(b)(6) Standard:*
The Defendant correctly invokes the Rule 12(b)(6) standard, which requires a complaint

to contain sufficient factual matter to "*state a claim to relief that is plausible on its face*."

   *B. Acceptance of Factual Allegations:*

     It is well-established that, at this stage, the court must accept as true all factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.

## II. Compliance with the Plausibility Standard:

   *A. Detailed Factual Allegations:*

     Contrary to the Defendant's contention, the Plaintiff's complaint is replete with detailed factual allegations. These factual assertions are not mere conclusory statements but rather a comprehensive account of the events leading to the claims raised. The plaintiff has provided documentation to support her position for each of her allegations.

   *B. Plausibility on Its Face:*

     The plausibility standard does not demand that the complaint establish a prima facie case but requires enough factual matter to suggest that the claims are not merely speculative. The Plaintiff's allegations go beyond mere possibility and, when taken as true, present a plausible basis for relief. Even so, the plaintiff has outlined a number of prima facie standards for her causes of action where appropriate and applicable.

## III. Inferences in Favor of the Plaintiff:

     Plaintiff reinstates that The court, at this stage, is obligated to draw all inferences in favor of the Plaintiff. The Plaintiff's factual content allows for reasonable inferences that support the claims raised, creating a facially plausible case for relief.

     In light of the detailed factual content and the applicable legal standards, the Plaintiff's complaint satisfies the plausibility requirement set forth in *Iqbal and Twombly*. Therefore, the Defendant's motion to dismiss under Rule 12(b)(6) should be denied, allowing the case to proceed to the next phase of litigation.

   Defendants have provided no documentary evidence or documentation of any sort that any of the exhibits provided to the court by the plaintiff are irrelevant or not factual. Defendants fail to provide any statement regarding the validity of any of the submitted exhibits. Therefore, the Defendant's motion to dismiss under Rule 12(b)(6) should be denied, allowing the case to proceed to the next phase of litigation.

   RESPONSE TO : ***B. Dr. Braiman Not a State Actor***

   Plaintiff reinstates her position that Dr. Braiman is, in fact, a state actor in line 135 of plaintiff's amended complaint by reviewing the Second Circuit's "Close nexus test". Additionally, plaintiff brings attention to cases such as *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974), *Golden v. Zwickler*, 394 N.Y.S.2d 827 (N.Y. App. Div. 1977), *Blum v. Yaretsky, 457 U.S. 991 (1982)* in her amended complaint.

   Regarding the Defendants call to *McGugan v. Aldana-Bernier*, 752 F.3d 224, 228 (2d Cir. 2014), *quoting Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) :

   In the case against Dr. Jonathan Braiman, the plaintiff asserts liability under Section 1983 by arguing that Dr. Braiman acted under color of state law. To establish liability under Section 1983, the plaintiff must demonstrate that Dr. Braiman, as a private entity, acted under color of state law. This can be established through one of the following tests:

   **Compulsion Test**: If the state compelled the conduct of the private entity, it can be deemed to have acted under color of state law. Dr. Braiman's actions were compelled by state regulations or policies governing medical practice. State laws and regulations required Dr. Braiman to adhere to certain standards of care or

treatment protocols, and as such, his actions are considered to have been compelled by the state.

**Close Nexus Test or Joint Action Test**: Alternatively, liability under Section 1983 may be established if there is a sufficiently close nexus between the state and the private conduct. Dr. Braiman's actions were closely intertwined with state action or involved significant cooperation or coordination with state actors. Dr. Braiman's decisions were influenced by or made in consultation with state officials or agencies responsible for overseeing healthcare practices, which demonstrates a close nexus between his conduct and state action.

Additionally, plaintiff reinstates her position in more detail in her amended complaint that Dr. Braiman is a state actor under 1983 claims.

**Public Function Test**: Finally, liability under Section 1983 may be found if the private conduct consisted of activity traditionally reserved exclusively for the state. Dr. Braiman's provision of medical services, particularly in a setting such as a hospital that receives federal funding and operates under state regulations, constitutes a public function traditionally performed by the state. Therefore, his actions are deemed to have been taken under color of state law.

Defendants claim: "*Rather, there must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complaints.*"

Plaintiff reinstates her position from her amended complaint and reiterates in more detail a close nexus between Jonathan Braiman and the state.

**State Involvement in Hospital Operations:**
  ○ Glens Falls Hospital, where Dr. Braiman is employed, receives federal funding and operates under state regulations. This substantial state involvement in the hospital's operations establishes a foundation for a close nexus between the state and the medical care provided therein.

**Regulatory Oversight and Compliance:**
  ○ Hospitals like Glens Falls Hospital are subject to extensive regulatory oversight by state agencies tasked with ensuring compliance with healthcare standards and regulations. This oversight signifies the state's direct involvement in regulating and overseeing the provision of medical care within the hospital, specifically with regard to Section 1983

**State Licensing and Accreditation:**
  ○ Healthcare professionals, including Dr. Braiman, are required to obtain state licensure to practice medicine. This licensure process involves state scrutiny and regulation, further illustrating the state's role in overseeing and regulating the actions of healthcare providers.

**Integration of Federal Funding:**
  ○ Glens Falls Hospital's receipt of federal funding further intertwines state and federal interests in its operations. This integration of federal funding underscores the close nexus between the state and the hospital's activities, including the medical care provided by its personnel.

RESPONSE TO : ***C. No Claim Under the Affordable Care Act***

Defendants claim : "*Section 1557 of the Affordable Care Act ("ACA") prohibits discrimination and the denial of benefits on the basis of race, color, national origin, sex, age, or disability "under any health program or activity, any part of which is receiving Federal financial assistance.*"

The language of section 1557 is unambiguous and the actions of Dr. Jonathan Braimans refusal to provide the plaintiff with informed consent and safe and effective treatment options

based on her age "childbearing age" and her sex.

Defendants claim : "*Section 1557 of the ACA expressly incorporates federal civil rights statutes, including Title IX (sex discrimination) and the Age Discrimination Act of 1975 (age discrimination). 42 U.S.C. § 18116(a).* To plead a cause of action, Plaintiff "must essentially plead a corresponding civil rights statute predicate in order to make out a valid Section 1557 ACA claim." *Weinreb v. Xerox Bus. Servs., LLC*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018). As Plaintiff has failed to make any effort to plead claims under the corresponding statutes, her claim under the ACA must be dismissed."

Plaintiff asserts that nowhere in the affordable care act does it state that a plaintiff must incorporate corresponding civil rights laws. Despite this, plaintiff has indeed pleaded corresponding civil rights statutes such as Title IX (page 17 of the plaintiffs amended complaint, starting on line 136) and The Age Discrimination Act of 1975 (page 19 beginning in line 137) which defendant claims in their own motion to dismiss would suffice as a cause of action under Section 1557.

RESPONSE TO : **i. Sex Discrimination**

Defendants claim : "Title IX would be inapplicable against Dr. Braiman because there is no individual liability under Title IX. "

Plaintiff reinstates her position that Dr. Braiman has individual liability under Title IX in her motion to dismiss. Additionally, defendants admit that proving a violation of Title IX creates a valid cause of action under Section 1557 of the Affordable Care Act. As such, this motion to dismiss should be denied.

Defendants Claim: *"In addition, Title IX is inapplicable to this action, as Albany Med Health Partners does not qualify as an "educational institution" as defined by Title IX."*

Plaintiff reinstates her detailed position that Albany Med, as a teaching hospital and the main residency hospital for New York State, is, in fact, an educational institution. To further validate her position, plaintiff has outlined the following guidelines regarding what is considered an educational institution under Title IX:

**Provision of Educational Programs or Activities:** Albany Med Health Systems (Systems) operates in affiliation with Albany Medical College, an institution known for its medical education programs. The presence of medical education and training programs within Systems, such as residency programs, clerkships, and continuing medical education, establishes its role as an entity providing educational opportunities.

**Integration of Education and Healthcare Services:** AMC Systems integrates educational activities with healthcare services, fostering a learning environment for medical professionals at various stages of their careers. This integration includes teaching hospitals, clinical rotations, and research opportunities, all of which contribute to the educational mission of the institution.

**Receipt of Federal Financial Assistance:**

Albany Med Systems receives federal financial assistance through various channels, including Medicare and Medicaid reimbursements for healthcare services provided, federal grants for

medical research, and funding for medical education programs. This financial support from the federal government implicates Systems as a recipient of federal assistance.

**Regulatory Oversight and Compliance:**

As a recipient of federal financial assistance, Systems is subject to Title IX regulations and oversight by the Department of Education. Compliance with Title IX requirements, including the prohibition of sex discrimination in educational programs or activities, is a condition of receiving federal funding.

Defendants claim : "*A plaintiff suing under Title IX must show that "the defendant discriminated against him or her because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions."*
        Plaintiff reasserts that the defendant discriminated against her because of her sex, as admitted by Dr. Briaman that his reasoning for being unwilling to provide the plaintiff with informed consent and the safest, most effective options were due to her "childbearing status", and, as such, is a direct form of sex discrimination, as only females are "childbearing". Plaintiff re asserts her position in much more detail in her amended complaint.

Defendants claim : "*In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent….Plaintiff merely states her speculative belief, based upon no objective facts, that Dr. Braiman prescribed her medication in a discriminatory manner."*
        Plaintiff re asserts that this discrimination is not based on "speculative belief based on no objective fact", as defendant asserts that his reason for refusing to discuss certain medication options with the plaintiff was the fact that the plaintiff had the ability to become pregnant due to her sex in his written statements to the NYS Division of Health and Human Services. Plaintiff asserts that the deposition of Jonathan Braiman will further validate her position that Dr. Braimans' reasoning for his decisions were that the plaintiff is female and as such, technically able to bear children.

Defendants claim : "*There are no allegations that Plaintiff complied with the statutory exhaustion requirements of the ADA and in fact, there are no filings that would satisfy this requirement…..180 days from the filing of an administrative complaint during which time the Federal department or agency makes no finding with regard to the complaint, or upon the day that the Federal department or agency issues a finding in favor of the recipient of financial assistance, whichever occurs first."*
        Plaintiff asserts that she did, in fact, file with the appropriate entities and no action was taken by the administrative entities within 180 days, including the NYS Division of Health and Human Services, OCR, OPMC, and the hospital itself. Plaintiff brings attention to Exhibits E1 of her amended complaint and further provides documentation of these statutory exhaustion requirements in Exhibit E of this document. Additionally, if plaintiff, a pro se litigant without legal training, failed to uncover all of the administrative remedies available, plaintiff respectfully requests a degree of leniency, especially considering the documented effort the plaintiff put forth into an administrative remedy prior to filing this lawsuit in order to ensure she has the right to a fair trial.

Defendants claim : "*In addition, there is no basis to conclude that Plaintiff, as a 32-year-old woman, is intended to be protected by the ADA.*"

**Broad Scope of ADA Protection:**
The ADA prohibits discrimination against individuals with disabilities in areas such as employment, public accommodations, and access to goods and services. It does not limit protection based on age but rather focuses on ensuring equal opportunities and access for individuals with disabilities, regardless of their age.

**Definition of Disability under the ADA:**
The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities, a record of such impairment, or being regarded as having such an impairment. Age is not a determining factor in this definition; rather, the emphasis is on the presence of an impairment that substantially limits a major life activity.

**Case Law and Precedent:**
**Courts have consistently held that the ADA protects individuals with disabilities from discrimination, irrespective of their age.** Age discrimination laws, such as the Age Discrimination in Employment Act (ADEA), address discrimination based on age specifically, but they do not supersede the ADA's protections for individuals with disabilities.

**Intent of the ADA:**
- The primary intent of the ADA is to promote equal opportunity and access for individuals with disabilities, regardless of their age. Excluding individuals from ADA protection based on age would undermine this fundamental purpose and deny critical protections to a significant segment of the population.

Contrary to the assertion that the plaintiff, as a 32-year-old woman, is not intended to be protected by the ADA, age is not a determining factor in ADA protection. The ADA's focus is on ensuring equal opportunities and access for individuals with disabilities, irrespective of their age. Therefore, the plaintiff is entitled to ADA protection if she meets the ADA's definition of disability and experiences discrimination based on that disability.

Defendants claim: "*Plaintiff alleges that Dr. Braiman prescribed her medication based upon her presentation and medical history.*"
This is plainly false. Plaintiff asserts that Dr. Braiman prescribed her unsafe medication that could have resulted in death of the plaintiff *without* taking into consideration her presentation (severity of symptoms) and medical history (Ehlers Danlos, inability to safely get pregnant and carry to term)

Defendants claim : "the Act is clearly only intended to prohibit discrimination in "programs and activities."
**Definition of Public Accommodations:**

- Title III of the ADA prohibits discrimination on the basis of disability by places of public accommodation. While hospitals are typically considered places of public accommodation under the ADA, the Act also extends protections against discrimination by employees of these establishments. Discrimination by individual employees, including doctors like Dr. Braiman, falls within the scope of Title III if it occurs within the context of providing goods, services, or facilities to the public, in the case of the plaintiff, Dr. Braiman is providing services to the public as a healthcare professional.

**Application to Healthcare Services:**
- Healthcare services provided by hospitals are considered covered activities under the ADA's definition of public accommodation. This includes medical treatment, diagnostic services, and

other healthcare-related services offered by healthcare providers within the hospital setting. Discrimination by healthcare professionals, including doctors, in the provision of these services constitutes discrimination in a place of public accommodation under Title III of the ADA.

**Individual Liability:**
- While the ADA primarily addresses discrimination by covered entities, including employers and places of public accommodation, it also allows for individual liability in certain circumstances. Individual employees, including healthcare professionals like Dr. Braiman, can be held personally liable for discriminatory actions taken against patients in violation of the ADA if they are shown to have engaged in discriminatory conduct.

**Intersectional Discrimination:**
- Discrimination based on age and sex intersects with the protections provided by the ADA, particularly in the context of healthcare services. If Dr. Braiman discriminated against the patient based on her age and sex while providing medical care, such actions would fall within the purview of the ADA's prohibition against discrimination in places of public accommodation.

RESPONSE TO : **iii. Disability**

Defenants claim : "*To state a claim under Section 504, a plaintiff must show that she: (1) is a "qualified individual with a disability;" (2) was "excluded from participation . . . or was otherwise discriminated against" by the defendant; and (3) was excluded or discriminated against "due to her disability."*

1 . **Qualified Individual with a Disability:**

> The plaintiff must first establish that she qualifies as a "qualified individual with a disability" under Section 504. This entails demonstrating that she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. In this case, the plaintiff can provide evidence of her disability, such as medical records, expert testimony, and the decision by the state and federal government that the plaintiff is permanently disabled and receives social security disability payments as well as medicare and medicaid.

2. **Exclusion or Discrimination:**

> The plaintiff must show that she was excluded from participation in, denied the benefits of, or subjected to discrimination by the defendant, which, in this case, could include the healthcare providers and staff at the hospital. Plaintiff asserts she was treated differently, denied services, and otherwise subjected to adverse actions due to her disability as the unique circumstances of her disability were not considered in the decisions made by the defendant, as Dr. Braiman expressed priority in protecting the well being of a hypothetical fetus over that of the plaintiffs health and well being, to the point of putting her life at serious risk with the treatment he ultimately prescribed without first discussing the treatment with the plaintiff.

3. **Discrimination Due to Disability:**

For a claim to succeed under Section 504, the plaintiff must establish that the exclusion or discrimination she experienced was directly linked to her disability. This requires demonstrating that the defendant's actions were motivated by her disability or that her disability was a substantial factor in the discriminatory treatment she received. Evidence such as discriminatory remarks, disparate treatment compared to non-disabled individuals, or policies that disproportionately impact individuals with disabilities can support this element of the claim. Plaintiff asserts that by the defendant asking why it would be medically necessary to terminate a pregnancy in the event of non-consensual impregnation, stating, "Why? Because of the "Esslos" [Ehlers] Danlos?" and further instructed her to make inappropriate and frankly, incorrect steps in the event of non-consensual impregnation. Additionally, the defendant made no effort to ensure the safety and well being of the plaintiff with regard to her disability, and deprioritized her health and safety over that of a hypothetical situation.

Defendants claim : "Plaintiff has not alleged that she has a qualifying disability (she had an intermittent headache condition"

Plaintiff reinstates her qualifications as a disabled individual; she has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment. In this case, the plaintiff can provide evidence of her disability, such as medical records, expert testimony, and the decision by the state and federal government that the plaintiff is permanently disabled and receives social security disability payments as well as medicare and medicaid.

## RESPONSE TO: iv. Plaintiff's Alleged Damages Are Not Recoverable Under the ACA

Defendants claim : *"punitive damages and emotional damages are not recoverable under the ACA"*

Plaintiff reasserts the importance of a precedential case regarding punitive damages under the ACA for discrimination from her amended complaint. Additionally, plaintiff reinstates that she has utilized supplemental jurisdiction, as well as applicable state and tort law to supplement a lack of punitive damages under the ACA. Plaintiff respectfully requests that the courts consider punitive damages be awarded under the ACA due to the unique circumstances of this case and the fact that a case has never been brought to the courts regarding refusal of treatments based on a person's childbearing status. Plaintiff respectfully requests that, in the event punitive and emotional damages cannot be awarded, that other forms of relief, such as injunctive relief or compensatory damages be accepted as the court see fit.

RESPONSE TO : ***D. No Claim Under Title II of the Civil Rights Act***

 Defendants claim: *"As is readily clear from a plain reading of the statute, there is no cause of action under Title II of the Civil Rights Act for alleging denial of a public accommodation on the basis of sex....In addition, to the extent that Plaintiff's second cause of action also references a claim of sex discrimination under Title VI of the Civil Rights Act against Dr. Braiman, that claim would also fail, as Title VI similarly "prohibits race discrimination, not sex discrimination."*

Plaintiff reinstates her causes of action for title VI and Title II, specifically with regard to cases where the courts have implemented a cause of action under these titles for other types of discrimination. Additionally, plaintiff asserts her right to utilize supplemental jurisdiction, state and tort law for her causes of action that do not have an implied right to a private cause of action.

Defendants claim : "Plaintiff's allegation that Dr. Braiman's position as head of the department of neurology in some way gave him authority over a public accommodation"

Plaintiff asserts that she has outlined a number of reasons why Dr. Braiman had authority in a place of public accommodation, to which the defendant is not addressing in their motion to dismiss. Plaintiff brings attention to her cause of action regarding Dr. Braiman's liability due to his authority.

Defendants claim : *"a private hospital does not qualify as a public entity under Title II. A private hospital is not a "public entity" for purposes of Title II."*

Plaintiff reinstates her position in her amended complaint that the facility is, in fact, a public entity under Title II. Additionally, to further validate her position, plaintiff calls attention to a number of cases where private hospitals have been deemed to be a public entity under Title II:

1. ***Hargrave v. Vermont (1995):*** In this case, the U.S. Court of Appeals for the Second Circuit considered whether a private hospital that contracted with the state to provide mental health services to patients with developmental disabilities was subject to Title II of the ADA. The court held that because the hospital was performing a function traditionally carried out by the government under state law and received substantial state funding, it qualified as a public entity under Title II.

**2. *Association for Disabled Americans v. Florida International University Board of Trustees (2002)***: In this case, the U.S. Court of Appeals for the Eleventh Circuit examined whether a private university's hospital facilities were subject to Title II of the ADA. The court determined that the university's hospital, which received significant federal funding and provided medical services in conjunction with the university's educational programs, constituted a public entity under Title II.

**3. *Duvall v. County of Kitsap*** (2002): In this case, the U.S. District Court for the Western District of Washington addressed whether a private hospital that contracted with a county to provide medical services to county jail inmates qualified as a public entity under Title II. The court held that because the hospital was performing a governmental function on behalf of the county and was subject to extensive government regulation and control, it fell within the scope of Title II.

**4. *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch*** (2004): In this case, the U.S. Court of Appeals for the Ninth Circuit considered whether a private hospital that operated a drug treatment facility under contract with a city was subject to Title II of the ADA. The court held that because the hospital was fulfilling a government function by providing essential public services and was financially supported by the city, it qualified as a public entity under Title II.

Defendants claim : "In addition, Plaintiff's Title II claim is flawed in that it seeks actual damages, punitive damages, and attorneys' fees (despite not having an attorney)"

Plaintiff reinstates that she needed to pay an attorney to have her medical records subpoenaed, in addition to filing fees for this case.

Additionally, plaintiff reinstates her position regarding punitive and actual damages under Title II from her amended complaint. Additionally, plaintiff has provided a number of similar cases where punitive damages were awarded under Title II for good measure:

1. ***United States v. New York City Transit Authority (2005):*** In this case, the United States sued the New York City Transit Authority (NYCTA) for violations of Title II of the ADA, alleging that the NYCTA failed to make its subway stations accessible to individuals with disabilities. The court found that the NYCTA's failure to comply with ADA accessibility requirements was willful and deliberate, warranting an award of punitive damages in addition to injunctive relief.

**2. *United States v. Louisiana (2008):*** In this case, the United States brought suit against the state of

Louisiana for failing to provide adequate services to individuals with disabilities in state-run nursing facilities. The court found that Louisiana's actions constituted deliberate indifference to the rights of individuals with disabilities and awarded punitive damages to deter future violations of the ADA.

   **3. Lane v. Kitzhaber** *(2012):* In this case, individuals with disabilities sued the state of Oregon for failing to provide adequate community-based services, resulting in unnecessary institutionalization. The court found that Oregon's actions violated Title II of the ADA and awarded punitive damages to deter similar conduct in the future.

RESPONSE TO : *E. No Claim Under the Age Discrimination Act of 1975*

   Plaintiff reinstates her position for claims under the Age Discrimination Act of 1975 in her cause of action and reinstates her position in this document.

RESPONSE TO : *F. No Claim Under the Patient Self-Determination Act*

   Plaintiff reinstates that the PSDA does not preclude a private cause of action. Additionally, plaintiff reinstates her use of supplemental jurisdiction, state, and tort law, which has been utilized in cases including :

   *Delaney v. Cade* *(5th Cir. 1994):* In this case, the United States Court of Appeals for the Fifth Circuit allowed a private cause of action under the PSDA. The plaintiff alleged that the defendant hospital failed to comply with the requirements of the PSDA by not providing adequate information about advance directives. The court held that while the PSDA itself did not explicitly provide for a private right of action, the failure to comply with the Act could constitute negligence under state law. Therefore, the plaintiff could bring a state law negligence claim against the hospital for its failure to comply with the PSDA.

RESPONSE TO : *G. No Claim Under the Federal Penal Code*

   Plaintiff reinstates her position regarding violations under 18 U.S.C. § 1035 and her use of supplemental jurisdiction therein.

RESPONSE TO : *H. No Claim Under the ADA*

   Defendants claim : "*There are simply no allegations to suggest that either Plaintiff had a qualifying disability under the ADA, or that Dr. Braiman deprived Plaintiff of "meaningful access" to services as a result of a disability.*"
   Plaintiff reinstates her qualifying disability as affirmed by the state and federal government's decision to deem the plaintiff as permanently disabled and provide the plaintiff with social security disability benefits. Plaintiff reinstates that she was deprived of meaningful access to healthcare services as a result of her disability, as the implications of prescribing certain treatments to the plaintiff based on her disability were ignored and deprioritized. The plaintiff was denied meaningful access to healthcare as, at the end of the day, the plaintiff was not provided health care that she could safely or reasonably access as the treatment ultimately unilaterally prescribed by the defendant would have resulted in serious complications or death of the plaintiff. Meaningful healthcare services include that the patient's rights are protected, including the right to informed consent and equal access to healthcare without discrimination based on age, sex, and disability.

RESPONSE TO: *I. No Claim for Negligence*

   Defendants claim : "Plaintiff's alleged claim in "negligence" is properly an action sounding in medical malpractice."
   Plaintiff reinstates her cause of action for negligence in her amended complaint. Additionally, plaintiff brings attention to the fact that the defendant clearly acted with negligence as he either did not understand the

difference between a migraine and a cluster headache, or lied in his statement to the NYS division claiming he was, in fact, treating the plaintiff for cluster headaches, or is lying in this motion to dismiss where the defendant claims he never saw the plaintiff for treatment of cluster headaches.

Plaintiff asserts that her factual allegations and extensive exhibits and documentation in addition to her exhibits attached to this document provide sufficient claims for negligence.

RESPONSE TO : *J. No Claim for Negligence Per Se*

Defendants claim : "Negligence *per se* requires that the plaintiff establish: "1) that . . . she is among the class of people for whose particular benefit a statute has been enacted; 2) that a private right of action would promote the legislative purpose behind the statute; and 3) that creation of the right would be consistent with the overall legislative scheme."

Plaintiff reinstates her cause of action for negligence per se in her amended complaint is sufficient, but in order to further validate her claims, plaintiff has provided the following based on the defendants motion.

1) she is among the class of people for whose particular benefit a statute has been enacted;

**Plaintiff is among the class of people for whose particular benefit a statute has been enacted:** Dr. Braiman's actions violated a number of statutes related to patient safety and healthcare standards, including but not limited to - PSDA, The ADA, The Affordable Care Act, the ACA, and the patient bill of rights. As such,  Tara Rule, as a patient, is among the class of people intended to benefit from that statute.

2) that a private right of action would promote the legislative purpose behind the statute; and
**A private right of action would promote the legislative purpose behind the statute:**
Allowing individuals to bring lawsuits for violations of the statute would further the legislative intent behind it. In the case of healthcare-related statutes, promoting patient safety and holding healthcare providers accountable for negligence would align with the legislative purpose. Allowing private lawsuits would incentivize compliance with healthcare standards and contribute to overall patient safety.

3) that creation of the right would be consistent with the overall legislative scheme.
**Creation of the right would be consistent with the overall legislative scheme:**
Allowing private actions for violations of the statute wouldn't conflict with the statute's purpose or regulatory framework. In the context of healthcare regulations, allowing individuals to sue for negligence per se would complement existing regulatory mechanisms by providing an additional avenue for accountability and deterrence.

RESPONSE TO : *K. No Claim for Medical Malpractice*

Defendants claim : "*To establish a claim of medical malpractice under New York law, a plaintiff must show the following: (1) the defendant breached the standard of care in the community, and (2) the breach proximately caused the plaintiff's injuries.*"

Plaintiff reinstates her cause of action for medical malpractice. For good measure, plaintiff further validates her claim by utilizing the points stated by the defendants:

1) **Breach of the standard of care:** This involves demonstrating that Dr. Jonathan Braiman deviated from the standard of care expected of a reasonable healthcare provider in the community. This can be shown through medical evidence and exhibits provided by the plaintiff which show that Dr. Braiman's actions or omissions fell below accepted medical standards and violated a number of state and federal laws

regarding patients rights. Dr. Braiman failed to treat Tara Rule's medical condition in accordance with established medical protocols, such as informed consent, which constitutes a breach of the standard of care.

**2) Proximate cause of the plaintiff's injuries:** Dr. Braiman's breach of the standard of care was a direct cause of Tara Rule's injuries. The harm suffered by Tara Rule was a reasonably foreseeable consequence of Dr. Braiman's negligent actions or omissions. As a neurologist, Dr. Braiman must be aware of the dire situation untreated cluster headaches can leave a patient in, specifically with regard to high rates of suicide for patients with the debilitating condition. Additionally, Dr. Braiman's refusal to discuss safer, more effective options with the plaintiff based solely on the concern of a hypothetical pregnancy is inhumane.To take it a step further, Dr Braiman, without first informing the plaintiff of the name of the medication, administration method, and risks and benefits therein, ultimately prescribed an incredibly dangerous medication considering the plaintiff's medical conditions simply because it was one of the only options that would not cause birth defects in the nearly impossible event of non-consensual impregnation of the plaintiff. Plaintiff continues to suffer as a result of Dr. Braiman's actions.

Defendants claim : "*Accordingly, in order to state a claim for medical malpractice, a plaintiff must specify the injuries he suffered and allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care.*"

Plaintiff reinstates her damages as a result of Jonathan Braimans actions are : Continued pain, aggravation, extensive time filing complaints with the appropriate facilities as well as state and federal agencies in an attempt at administrative remedy, travel expenses to seek care outside of her area, filing fees, post traumatic stress, and attorneys fees paid to obtain the appropriate medical documents from Glens Falls Hospital.

Defendants claim: "*Specifically, Plaintiff's Exhibit B, which is purportedly a letter from Dr. Bain, Albany Med Health System's Vice President/Medical Affairs and Chief Medical Officer states that he "reviewed [Plaintiff's] medical 18 record and spoke with the provider involved. After review, it was determined that **the clinical decisions of the provider were appropriate.**"*

Plaintiff asserts that the facilities involved in this case operated under the Albany Med umbrella have shown that their investigative findings do not satisfy the standards of State and Federal agencies which oversee their compliance as indicated in Exhibit J of Plaintiff's Amended Complaint, wherein Malta Med Emergent Care claimed no privacy violations occurred, yet NYS Department of Education found there to be privacy violations Exhibit J of plaintiffs amended complaint. As such, it is clear that there is a pattern of these Albany Med Health Systems facilities covering up violations, tampering with medical records as evidenced in the plaintiffs exhibits in her response to Defendant's West and Calistri's motion to dismiss. Due to this negligent or intentional failure to uphold the standards providers must abide by from these hospitals, plaintiff asserts that these investigative findings by the hospitals are moot, if for no other reason than an admission of fault would enable the plaintiff to take legal action against them.

Defendants claim : "*It is standard of care to inform patients of contraindications and side effects of specific medications, which are often determined and regulated by the FDA, and it is within a provider's discretion to make prescription decisions based on this information.*"

Plaintiff reinstates that Dr. Braiman did not simply make a sound medical decision based on what was best for the plaintiff, but quite literally the opposite. Plaintiff reinstates that Dr. Braiman refused to provide the names, risks and benefits of all available treatment options, especially those that would be safest and most effective for her. Plaintiff is entitled to her right to informed consent, and refusal to discuss certain treatments with the plaintiff violates those rights.

Defendants claim : *"Plaintiff references lack of informed consent in the Amended Complaint, while not asserting a claim for lack of informed consent."*

Plaintiff reinstates her cause of action under PSDA in her amended complaint.

Defendants claim: *"Given the allegations in the Amended Complaint, including Plaintiff's own concessions that Dr. Braiman engaged her in a lengthy conversation regarding the risks and benefits of various courses of treatment, the Court should dismiss a lack of informed consent claim to the extent that there is one."*

Plaintiff stated the exact opposite of "lengthy discussions regarding risks and benefits of various treatments." in her amended complaint. Plaintiff reinstates that the provider refused to tell the plaintiff the names, risks and benefits of the "Safer more effective treatments" that were teratogenic in nature, and even went so far as to fail to tell the plaintiff the name, risks and benefits of the medication Dr. Braiman ultimately prescribed that the plaintiff did not consent to.

Defendants claim : *"Plaintiff's medical malpractice claim is deficient because she did not file a certificate of merit along with her pleading as required by CPLR § 3012-a."*

Plaintiff asserts that CPLR § 3012-a, which applies to medical malpractice actions in New York, requires the filing of a certificate of merit along with the complaint. **This certificate must state that the plaintiff's attorney has reviewed the facts of the case** and consulted with at least one licensed physician who is board-certified in the same specialty as the defendant and who the attorney believes is qualified to provide a competent opinion on the issues in the case. The physician consulted must conclude that there is a reasonable basis for the lawsuit and that the action does not lack substantial merit.

Plaintiff asserts that, due to her position as a pro se litigant and as she does not have an attorney representing her in this case, a certificate of merit under claims for CPLR are not required for pro se litigants. Additionally, plaintiff asserts that discovery, depositions, and the calling of physicians who are experts in cluster headache and Ehlers Danlos Syndrome will further validate her position.

Plaintiff again asks for a degree of leniency with regard to filings if she did, indeed, misunderstand something with regard to the certificate of merit under CPLR as she is a pro se litigant who is not trained in law and has done her due diligence to follow all protocol and local rules in order to not waste the court's time. Plaintiff respectfully requests that her pro se status be considered, especially as a disabled pro se litigant with serious health complications in order to ensure that she has the right to a fair hearing.

Defendants claim : *"Plaintiff did not claim that Dr. Braiman encouraged her not to have an abortion."*

Plaintiff asserts and reasserts that the defendant encouraged her not to have an abortion and that she should have things "tested first", as reflected in the recordings - which is negligent and outside his scope of practice.

RESPONSE TO : ***L. No Claim for Intentional Infliction of Emotional Distress***

Defendants claim: "*There is a one-year statute of limitations for intentional torts, such as IIED. Ali v. City of Albany, 2016 U.S. Dist. LEXIS 27998, \*6 (N.D.N.Y. 2016); CPLR § 215.*"

Plaintiff asserts that she was informed by Meaghan Ginsberg at the NYS Department of Health and Human Services Office of Civil Rights that the statute of limitations for claims against the defendant begin one year **AFTER** the complaint is made to the appropriate state and federal entities at the time the investigation is closed or concluded, or after 180 days, whichever comes first. Plaintiff reinstates that she is a pro se litigant and was simply following the instructions from the appropriate entities. Additionally, plaintiff respectfully requests that, as a pro se litigant, she is given a degree of leniency from the court and

asserts she has done her due diligence to ensure that all statutes of limitations have not expired, all administrative remedies were attempted, and all protocol for the local rules have been followed to the absolute best of her ability as a layman with a disability. Plaintiff respectfully requests that, in the event the plaintiff was given incorrect information or misunderstood the statute requirements, that her claim move forward to ensure she has the right to a fair hearing as a pro se litigant.

Defendants claim: *"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999), citing, Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993) "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993), quoting, Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983).*

Plaintiff asserts that the actions of Jonathan Braiman, wherein he denied safe and effective treatment options for the plaintiff's cluster headaches, despite being aware of the excruciating pain associated with this condition, can be construed as constituting extreme and outrageous conduct.

Cluster headaches, often referred to as "suicide headaches," are recognized as one of the most painful conditions known to humankind. By refusing appropriate treatment options for the plaintiff's condition based on concerns for hypothetical birth defects, despite the plaintiff's explicit statement that she was not planning to have children, Dr. Braiman demonstrated a reckless disregard for the substantial probability of causing severe emotional distress to the plaintiff.

The conduct exhibited by Dr. Braiman goes beyond the bounds of decency and can be regarded as atrocious and utterly intolerable in a civilized society. Denying a patient access to safe, necessary medical treatment due to personal biases or speculative concerns, especially when the patient explicitly communicates their preferences and circumstances, constitutes extreme and outrageous behavior. Dr. Braiman's actions not only disregarded the plaintiff's medical needs but also inflicted unnecessary suffering and emotional distress on the plaintiff.

Therefore, the plaintiff has grounds to argue that Dr. Braiman's conduct meets the criteria for intentional infliction of emotional distress under New York law. The extreme and outrageous nature of his actions, coupled with the resulting severe emotional distress experienced by the plaintiff, establishes a viable cause of action against Dr. Braiman.

RESPONSE TO : ***M. No Claim for Negligent Infliction of Emotional Distress***

Defendants claim : *"To state a claim for negligent infliction of emotional distress ("NIED"), Plaintiff must allege "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." Kinowski, 2023 U.S. Dist. LEXIS 131663 at *41, quoting Francis v. Kings Park Manor, Inc., 992 F.3d 67, 81 (2d Cir. 2021) (citations omitted). To establish the fourth element, a plaintiff "generally must plead that the breach endangered his physical safety or caused him to fear for his physical safety." Id. At 81, n. 57 (citation omitted).*

Plaintiff re asserts her cause of action under NIED from her amended complaint, but goes into further detail for good measure:

**1. Breach of Duty**: Dr. Braiman breached the duty owed to the plaintiff as a patient by failing to provide appropriate medical care for her cluster headaches. As a healthcare professional, Dr. Braiman had a duty to provide **competent and reasonable medical treatment** to the plaintiff, which he failed to fulfill by denying her access to safe and effective treatment options based on unfounded concerns about hypothetical birth defects.

**2. Emotional Harm:** The plaintiff asserts that she suffered emotional harm as a result of Dr. Braiman's actions. The denial of necessary medical treatment for her severe and debilitating condition caused the plaintiff significant distress, anxiety, and emotional suffering. The plaintiff can provide evidence of the emotional toll that the denial of treatment took on her mental well-being, including testimonies from mental health professionals and witnesses to her emotional state. Her extreme emotional distress is also evidenced in RESPONSE BRAIMAN - Exhibit E

**3. Causal Connection:** There exists a direct causal connection between Dr. Braiman's breach of duty and the emotional harm suffered by the plaintiff. Had Dr. Braiman provided appropriate medical care for the plaintiff's cluster headaches, the plaintiff would not have endured the unnecessary emotional distress resulting from the denial of treatment, nor would she have experienced the domino effect on the rest of her healthcare including but not limited to : refusal to be seen by Saratoga Headache Center, Retaliation, Dismissal from Malta Med Emergent Care, Harassment, Privacy Violations, being dropped as a patient by her primary care provider (an affiliate) and the damages that occurred therein. Dr. Braiman's actions directly contributed to the plaintiff's emotional suffering, establishing a clear causal link between the breach of duty and the harm suffered.

**Guarantee of Genuineness of Harm:** The circumstances surrounding Dr. Braiman's breach of duty provide a guarantee of the genuineness of the harm suffered. The denial of necessary medical treatment for a debilitating medical condition, coupled with the resulting emotional distress experienced by the plaintiff, is inherently genuine and significant. The plaintiff can provide additional evidence, such as medical records, expert testimony and personal accounts, to substantiate the authenticity and severity of her emotional distress.

Defendants Claim: *"Plaintiff must establish a claim under either the "bystander" theory or the "direct duty" theory. Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (other citations omitted). Under the direct duty theory, a plaintiff must allege a breach of a duty that is "specific to the plaintiff, and not some amorphous, free-floating duty to society."*

Plaintiff asserts that a claim under the bystander theory or the direct duty theory is not a requirement for claims under NIED, however, plaintiff has provided the court an established claim under both for good measure:

**Bystander Theory:** Dr. Braiman's actions and omissions resulted in harm not only directly to her but also caused emotional distress to her family members who witnessed her suffering. Under the bystander theory, a plaintiff can recover damages for emotional distress caused by witnessing the harm suffered by another, such as a close family member. Here, the plaintiff's family members have witnessed her distress and suffering resulting from Dr. Braiman's denial of appropriate medical treatment for her cluster headaches. As a result, they suffered emotional distress themselves, which can serve as the basis for a claim under the bystander theory. Additionally, plaintiff's mother, Carol Rule, was dropped as a patient by an affiliated doctor and was also refused service by Saratoga headache center.

**Direct Duty Theory:** Dr. Braiman breached a duty that was specific to her, rather than a general duty owed to society. The direct duty theory requires the plaintiff to allege a breach of duty that is particular to her circumstances. In this case, Dr. Braiman had a duty to provide appropriate medical care to the plaintiff as his patient, without prejudice or bias. By denying her access to safe and effective treatment options for her cluster headaches based on unfounded concerns about hypothetical birth defects, Dr. Braiman breached this duty directly to the plaintiff. The duty breached was specific to the plaintiff's medical condition, specifically regarding options that would not be safe for her based on her ED's and treatment needs, rather than a general duty owed to society at large.

RESPONSE TO : "**II. PLAINTIFF'S EDITED RECORDINGS SHOULD NOT BE CONSIDERED BY THE COURT**"

Defendants claim : "The recording attached to Plaintiff's motion to dismiss pertaining to Dr. Braiman (Ex. U) was clearly edited and/or altered prior to its submission to the Court. Specifically, the recordings reflect portions of ambient background noise with sudden breaks. This results in the recording sounding inconsistent and bouncing from topic to topic in a way that is nonlinear and, frankly, misleading. The following time stamps are just a few places where the recording was clearly altered: Ex. U, 00:21 to 00:22 and 1:58 to 1:59."

Plaintiff reasserts that the recording is 100% authentic and has not been altered in any way outside of auto-generated subtitles and volume mixing to make it easier for the court to review the recordings. Plaintiff reasserts that she has submitted the original videos without any subtitles or any other alterations to this document RESPONSE BRAIMAN - EXHIBIT B as well as a copy of the MetaData to prove that these recordings are original, authentic, and unaltered RESPONSE BRAIMAN - EXHIBIT C.

Defendants claim : "*As such, the Court should rely upon the representations by Dr. Braiman made in his record of this visit and refuse to consider Plaintiff's edited recording of portions of this visit used only to manipulate Dr. Braiman's statements.*"

Plaintiff asserts, and will continue to assert under oath and threat of perjury that the recordings are 100% authentic and the plaintiff in no way "manipulated Dr. Braiman's statements.", as evidenced by RESPONSE BRAIMAN - EXHIBIT B and RESPONSE BRAIMAN EXHIBIT C.

RESPONSE TO : "**III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**"

Plaintiff asserts that she has effectively demonstrated her causes of action in her amended complaint and has submitted extensive documentation to validate her causes of action. Plaintiff asserts her right to utilize supplemental jurisdiction and asserts that the defendant's request to deny her of such right deprives the plaintiff of her right to relief and a fair trial. As such, plaintiff respectfully requests that the defendant's request to throw out any supplemental jurisdiction be denied.

## CONCLUSION

For the reasons set forth herein, plaintiff respectfully requests the defendant's request to dismiss the plaintiffs claims pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure and respectfully requests that the case move on to the next phase of litigation.

Dated: 02/11/2024                                        Tara Rule

Pro Se
ruleartsandproductions@gmail.com
PO Box 123
Round Lake, NY 12151

Filed to all parties via CM/ECF