**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TARA RULE,

                                        *Plaintiff,*

        v.

JONATHAN BRAIMAN, DONNA KIRKER,
LISA WEST, CHRISTINE CALISTRI,
ALBANY MED HEALTH PARTNERS
SYSTEMS, GLENS FALLS HOSPITAL,
SARATOGA HOSPITAL, and MALTA MED
EMERGENT CARE,

                                        *Defendant(s).*

---

**Case No. 1:23-cv-01218-BKS-CFH**

**SECOND AMENDED COMPLAINT**

---

        Plaintiff Tara Rule, by and through her undersigned counsel, Eisenberg & Baum, LLP,
hereby states her Second Amended Complaint against Defendants Jonathan Braiman, Donna
Kirker, Lisa West, Christine Calistri, Albany Med Health Partners Systems, Glens Falls Hospital,
Saratoga Hospital, and Malta Med Emergent Care as follows:

                                        **PARTIES**

        1.        Plaintiff Tara Rule is a 32-year-old woman who suffers from a disabling genetic
disorder called Ehlers Danlos Syndrome (EDS) (hypermobile subtype), which causes severe pain,
fatigue, and medical complications, as well as a comorbid condition known as cluster headaches.

        2.        Upon information and belief, Defendant Albany Med Health Partners Systems
("Albany Med") is a private non-profit hospital located in Albany, New York, that receives federal
funding, including Medicare and Medicaid reimbursements.

        3.        Upon information and belief, Defendant Glens Falls Hospital is a private non-profit
hospital located in Glens Falls, New York, that receives federal funding, including Medicare and
Medicaid reimbursements.

4.      Upon information and belief, Defendant Saratoga Hospital is a private non-profit hospital located in Saratoga Springs, New York, that receives federal funding, including Medicare and Medicaid reimbursements.

5.      Upon information and belief, Defendant Malta Med Emergent Care is a private non-profit joint venture of Defendant Albany Med and Saratoga Hospital located in Malta, New York, that receives federal funding, including Medicare and Medicaid reimbursements.

6.      Upon information and belief, Defendant Albany Med owns Defendants Glens Falls Hospital, Saratoga Hospital, and Malta Med Emergent Care (collectively with Defendant Albany Med, the "Hospital Defendants").

7.      Upon information and belief, Defendant Dr. Jonathan Braiman is an individual and a neurologist in the Department of Neurology at Glens Falls Hospital.

8.      Upon information and belief, Defendant Donna Kirker, MS, RN, NEA-BC, is an individual who is Dr. Braiman's superior and the Sr. Vice President/Patient Services and Chief of Nursing at Glens Falls Hospital.

9.      Upon information and belief, Defendant Lisa West is an individual who is the Administrative Director of Emergency Services and Chief Nursing Officer at Saratoga Hospital.

10.      Upon information and belief, Defendant Christine Calistri is a nurse practitioner who was at all relevant times employed by Malta Med Emergent Care.

**JURISDICTION AND VENUE**

11.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, as the claims arise under the Constitution and laws of the United States, and supplemental jurisdiction over Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as all events giving rise to this action occurred within this District.

## STATEMENT OF FACTS

**A.     September 14, 2022 – Neurologist Jonathan Braiman, M.D.**

13.     On or about September 14, 2022, Plaintiff was seen by neurologist Dr. Jonathan Braiman for cluster headaches.

14.     Plaintiff and Dr. Braiman discussed in detail current medications, medication allergies, past failed treatments for cluster headaches, EDS, and comorbid conditions.

15.     Dr. Braiman informed Plaintiff that safe, effective treatments were available for cluster headaches, however he could not prescribe them to the Plaintiff, claiming that her health insurance company would not cover any treatments that have the potential to cause birth defects.

16.     Plaintiff responded that her insurance company fully covered the treatments her rheumatologist had prescribed for her autoimmune condition, including Cellcept, Mycophenolate, and Motefil, even though these treatments could also cause birth defects.

17.     As Dr. Braiman looked up the side effects Cellcept can have on a fetus and read them aloud, Plaintiff began recording the interaction on her phone.

18.     Dr. Braiman asked Plaintiff what she would do in the event of a pregnancy and Plaintiff responded that she would have to get an abortion.

19.     Plaintiff explained that her genetic doctor told her that pregnancy carried a high risk of complications, that there was a high likelihood of passing the disorder onto offspring, and that it was impossible to test a fetus for EDS.

20.     Dr. Braiman responded that there were "scans and tests" for birth defects, "but its trickier now with the way things are going" and that Plaintiff should "think deeply" about her

current medication regimen due to its potential for birth defects, as well as her decision to terminate a non-consensual pregnancy.

21.     Dr. Braiman also told Plaintiff that she would need to "bring her (male) partner in on the conversation" regarding her medical care and treatment. To this, Plaintiff replied that her partner had a vasectomy and that pregnancy wasn't a concern.

22.     When Plaintiff asked Dr. Braiman whether the treatments he was unwilling to prescribe would be safe and effective for those who have gone through menopause and hence were no longer of childbearing age, he replied "Yeah, they would be." When Plaintiff then asked Dr. Braiman whether the only reason he would not prescribe Plaintiff these treatments was because she could get pregnant, Dr. Braiman only replied, "How's your sleep?"

23.     Dr. Braiman refused to tell the Plaintiff the names, risks, and benefits of all available treatments. Instead, Dr. Braiman suggested a number of off-label treatments that, as the Plaintiff had already discussed with Dr. Braiman, she had already tried and failed.

24.     Dr. Braiman informed the Plaintiff that he would not be willing to prescribe any medication to her that had the potential to cause birth defects.

25.     On or about September 21, 2022, Plaintiff experienced complications due to the untreated cluster headaches, including severe pain, crying, sweating, shaking, and heightened blood pressure and pulse due to the pain, for which she sought treatment with Defendant Malta Med Emergent Care.

26.     On or about September 22, 2022, Dr. Braiman sent in Aimovig, a medication, to Plaintiff's pharmacy without her consent or discussing the risks and benefits of the medication. Plaintiff returned the Aimovig to the pharmacy after reading the warnings and side effects, which included serious injury or death.

27.     Dr. Braiman breached the applicable standard of care owed to Plaintiff as a patient by intentionally denying effective medical treatment on the basis of age and sex, failing to consider Plaintiff's wish not to have children, deprioritizing Plaintiff's safety, failing to respect Plaintiff's choice not to have children, and encouraging Plaintiff not to get an abortion in the event of pregnancy.

28.     On or around September 15, 2022, Plaintiff made a formal complaint to the Glens Falls Hospital Patient Relations. In her complaint, Plaintiff complained that she was treated differently due to her disability and because she was a woman of childbearing age. Plaintiff also submitted the above-mentioned recording of her interaction with Dr. Braiman with her complaint.

29.     On or about September 24, 2022, Plaintiff emailed Glens Falls Hospital patient relations department and reiterated that she was treated differently by Defendant due to her disability, age, and sex.

30.      In response to her complaints, Defendant Glen Falls Hospital replied, denying any wrongdoing.

**B.    September 21, 2022 – Malta Med Emergent Care**

31.     On September 21, 2022, Plaintiff experienced complications due to the untreated cluster headaches and went to the emergency department at Malta Med Emergent Care.

32.     Plaintiff's vitals were dangerously out of range due to the pain of the untreated cluster headaches and she arrived at the emergency department crying, sweating, and shaking, with heightened blood pressure and pulse due to the pain.

33.     During her visit with Malta Med Emergent Care, Plaintiff discussed the above-mentioned symptoms and complications she was experiencing due to her untreated cluster

headaches. Additionally, she discussed her documented cardiovascular conditions, including POTS (post orthostatic tachycardia syndrome) and venous insufficiency.

34.      Plaintiff was seen by Defendant Christine Calistri, a nurse practitioner.

35.      Plaintiff received one round of non- narcotic migraine cocktail and oxygen therapy, which did not stabilize her condition.

36.      A nurse then informed Plaintiff that she was being discharged from Malta Med Emergent Care without transfer because Glens Falls Hospital called them and told them to discharge Plaintiff because she was "live streaming" her visit.

37.      When Plaintiff asked for additional information, the nurse stated that she was "not sure" and would send in Calistri.

38.      At this moment, Plaintiff began recording the incident on her cell phone.

39.      At no point did Plaintiff ever "live stream" this interaction, nor her interaction with Dr. Braiman.

40.      Calistri and the nurse returned to Plaintiff's room and armed security guards walked over to the Plaintiff's room and stood outside the door in the hallway.

41.      Upon information and belief, Defendant Donna Kirker, at Glens Falls Hospital, had called Defendant Lisa West, at Saratoga Hospital, and West subsequently called the Malta Med Emergency Department Director, who then called the Malta Med Emergency Care Charge Nurse to say that Plaintiff had been "live streaming."

42.      Malta Med Emergent Care's audit trail noted that Lisa West had called Malta Med Emergent Care and spoke to the Charge Nurse and Defendant Calistri and provided the Plaintiff's room number as well as instructions to ask the Plaintiff to stop live streaming or to be escorted off premises.

43.     When Plaintiff asked how anyone from another hospital system would know that she was in the emergency department, Calistri responded that they "looked you up on the tracker" and "gave your room number" and the nurse added that "we searched your name."

44.     Calistri told Plaintiff that live streaming at Malta Med Emergent Care was illegal. Plaintiff continued to deny that she was live streaming, to which Calistri responded, "I don't know what you did, and I don't really care because you're lying" about live streaming, and "[y]ou can take it up with security and our legal department."

45.     The additional treatment ordered while Plaintiff was in the emergency room at Malta Med on September 21, 2022 was canceled immediately following the call from Defendant Lisa West, and this action was authorized and facilitated by Defendant Calistri and the Hospital Defendants.

46.     Plaintiff was asked to leave and escorted off the premises of Defendant Malta Med Emergent Care, despite that she was not stabilized and records indicate her blood pressure and pulse were still abnormally high.

47.     Medical records show that Calistri had written that Plaintiff was "feeling better" and "requests to be discharged," which was false.

48.     Upon information and belief, on September 21, 2022, no social media policies existed regarding the use of social medial in Malta Med Emergent Care.

49.     Upon information and belief, Plaintiff was escorted out of Malta Med Emergent Care solely because Plaintiff made repeated complaints about Dr. Braiman.

**C.      Google Review,  Calistri's Social Media Messages, and Additional Complaints**

50.     On September 21, 2022, Plaintiff's boyfriend left a negative Google review of the Med Malta Emergent Care wherein he did not mention Plaintiff's name or any identifying information.

51.     On September 30, 2022, Plaintiff's boyfriend received a message via Facebook from Calistri disclosing Plaintiff's private health information.

52.     Specifically, Calistri's message stated, "Do you understand I was given orders by my administration to confront Tara about posting a video? I knew nothing about her history with her care in Glens Falls . . . . As Tara's nurse practitioner, I did everything I knew how to do to help her feel better."

53.     Calistri further stated that she was receiving threats from Plaintiff's social media followers and that she feared for her children's safety.

54.     On October 1, 2022, Calistri sent Plaintiff's boyfriend another Facebook message: "Since she has shared my above note that I sent to you privately and I am now getting more threats, please have her share your comments that you posted publicly on the Maltmed google reviews. It's no mystery who you are."

55.     In or about October 2022, Plaintiff sent electronic complaints to patient relations at Defendant Glenn Falls Hospital, Saratoga Hospital, Albany Med Health Partners Systems, and Malta Med Emergent Care.

56.     These complaints detailed the incidents described in the above proceeding paragraphs and reiterated that Plaintiff was being treated differently by Defendants due to her disability, age, and sex. The complaints also provided screenshots of Ms. Calistri's Facebook messages.

**D.      Plaintiff's Attempts to Find New Neurologist**

57.     On or about October 25, 2022, Plaintiff was denied as a new patient by Saratoga Headache Center, even though it was accepting new patients at the time, accepted Plaintiff's insurance, and treated cluster headaches.

58.     Saratoga Headache Center is a partner company of Defendants Albany Med, Saratoga Hospital, and Glens Falls Hospital.

59.     Medical contact notes indicate that on October 21, 2022, Plaintiff asked one of her providers for a referral to Dr. Jackson at Saratoga Headache and a referral was faxed that day.

60.     Approximately two hours after the referral was faxed, Dr. Jackson called Plaintiff's provider and told the provider that he "is not taking on this patient he believes her case isn't qualified for their care" and that Plaintiff "would need to go to a different neurologist."

61.     On or about December 15, 2022, Plaintiff's primary care provider, Marc Price, DO, an employee of Albany Med, "cut Plaintiff off from all medications and medical services with no legitimate reason and without notice.

62.     Specifically, Dr. Price wrote Plaintiff by letter: "It is with regret that this letter serves to officially inform you that Family Medicine of Malta will no longer be able to provide medical care for you at this time."

## G.    Damages

63.     Upon information and belief, Plaintiff was dropped as a patient by the Hospital Defendants solely because she continuously complained about being treated differently by Hospital Defendants due to her disability, age, and sex.

64.     Additionally, upon information and belief, Plaintiff's mother was dropped as a patient by the Hospital Defendants for no other reason other than to further punish the Plaintiff for speaking out against the Hospital Defendants.

65.     Plaintiff, nor her mother, wanted to be dropped as patients by the Hospital Defendants.

66.     Defendants' actions and inactions set forth above have caused severe emotional distress to Plaintiff, impacting her well-being, physical health, daily life, and ability for enjoyment of life.

67.     In addition, Calistri's actions have caused interpersonal struggles between Plaintiff and her boyfriend as a result of her Facebook messages which caused Plaintiff and her boyfriend additional and severe emotional distress.

68.     Plaintiff has developed PTSD as a result of the above events and has experienced significant emotional and physical harm, pain and suffering, and additional medical expenses as she is too afraid to go to any local hospital due to the retaliatory actions of multiple local hospital systems and is frequently forced to travel out of state for medical care.

## CAUSES OF ACTION

## COUNT I

## DISCRIMINATION IN VIOLATION OF THE AFFORDABLE CARE ACT
### (Against Defendants Albany Med and Glens Falls Hospital)

69.     Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

70.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("ACA") has been in full force and effect and has applied to each of the Hospital Defendants' conduct.

71.     Under the ACA, "an individual shall not," on the basis of age, sex, or disability, among other grounds, "be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

72.    At all times relevant to this action, Defendants Albany Med and Glens Falls Hospital received federal financial assistance, including Medicare and Medicaid reimbursements, and has been principally engaged in the business of providing health care. Thus, Defendants Albany Med and Glens Falls Hospital are each a health program or activity receiving federal financial assistance under 42 U.S.C. § 18116(a).

73.    As set forth above, Defendants Albany Med and Glens Falls Hospital, discriminated against Plaintiff by refusing to adequately treat her on the basis of her age, sex, and disability, excluding her from their healthcare services in violation of the ACA.

74.    Plaintiff has suffered the physical and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## COUNT II

### RETALIATION IN VIOLATION OF THE AFFORDABLE CARE ACT
### (Against the Hospital Defendants)

75.     Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

76.    Section 1557 of the ACA also prohibits covered entities like the Hospital Defendants from retaliating against a person who opposes or complains of discrimination in violation of the ACA.

77.    Upon information and belief, the Hospital Defendants retaliated against Plaintiff by refusing to treat or continue to treat her after she made multiple complaints regarding discriminatory treatment by Defendants Dr. Braiman, Glens Falls Hospital, and Albany Med.

78.     Specifically, upon information and belief, Plaintiff was dropped as a patient and/or refused to be seen following her complaints by Defendants Glens Falls Hospital, Malta Med Emergent Care, and Saratoga Hospital, which are owned and/or operated by Defendant Albany Med, as set forth above.

79.     Upon information and belief, Plaintiff was dropped as a patient and/or refused to be seen by the Hospital Defendants solely because she continuously complained about being treated differently by Defendants Dr. Braiman, Glens Falls Hospital, and Albany Med due to her disability, age, and sex.

80.     As a result of the Hospital Defendants' retaliation against her, Plaintiff has suffered the physical and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## COUNT III

**DISCRIMINATION IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW**
**(Against Defendants Albany Med and Glens Falls Hospital)**

81.     Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

82.     At all times relevant to the action, the New York Human Rights Law, Article 15 of the New York Executive Law § 290, et seq. has been in full force and effect and has applied to the conduct of Defendants Albany Med and Glens Falls Hospital.

83.     At all times relevant to the action, Defendants Albany Med and Glen Falls Hospital have been places of public accommodation within the meaning of N.Y. Exec. L. § 292(9), which expressly includes "clinics" and "hospitals."

84.    Pursuant to N.Y. Exec. L. § 296(2)(a), "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the . . . sex, disability, [or] marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of" those characteristics,  "or that the patronage or custom threat of any person" having those characteristics "is unwelcome, objectionable or not acceptable, desired or solicited."

85.    As set forth above, Defendants Albany Med and Glens Falls Hospital discriminated against Plaintiff by refusing to adequately treat her on the basis of her age, sex, and disability, in violation of the NYHRL.

86.    The NYHRL extends a cause of action and relief to "any person claiming to be aggrieved" by an unlawful discriminatory practice. N.Y. Exec. L. § 297(9).

87.    Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper. N.Y. Exec. L. § 297(9).

## COUNT IV

## RETALIATION IN VIOLATION OF THE NEW YORK HUMAN RIGHTS LAW
### (Against the Hospital Defendants)

88.    Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

89.     The NYHRL also prohibits covered entities like the Hospital Defendants from retaliating against a person who opposes or complains of discrimination in violation of the NYHRL.

90.     Upon information and belief, the Hospital Defendants retaliated against Plaintiff by refusing to treat or continue to treat her after she made multiple complaints regarding discriminatory treatment by Defendants Dr. Braiman, Glens Falls Hospital, and Albany Med.

91.     Upon information and belief, Plaintiff was dropped or refused as a patient by each of the Hospital Defendants solely because she continuously complained about being treated differently by Hospital Defendants due to her disability, age, and sex.

92.     As a result of the Hospital Defendants' retaliation against her, Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## COUNT V

**VIOLATION OF THE EMERGENCY MEDICAL TREATMENT AND LABOR ACT**
**(Against Defendants Malta Med Emergent Care, Saratoga Hospital, and Albany Med)**

93.     Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

94.     At all times relevant, the Emergency Medical Treatment and Labor Act ("EMTALA") has been in full force and effect and has applied to the conduct of Defendants Malta Med Emergent Care, Saratoga Hospital, and Albany Med. *See* 42 U.S.C. § 1395dd(d)(2)(A).

95.     As set forth above, upon information and belief, Defendant Malta Med Emergent Care is a private non-profit joint venture of Defendant Albany Med and Saratoga Hospital located in Malta, New York.

96.    EMTALA imposes two relevant obligations on a hospital receiving an emergency patient (1) the hospital must provide for an appropriate medical screening examination to determine whether or not an emergency medical condition exists (a "screening requirement"); and (2) if the hospital determines that that an individual has an emergency medical condition, it 'must provide for such further medical examination and such treatment as may be required to stabilize the medical condition (a "stabilization requirement").

97.    Under EMTALA, an "emergency medical condition" is defined as a medical condition that manifests itself through acute symptoms of sufficient severity, which encompasses a wide range of medical conditions and symptoms, including cluster headaches and the severe pain associated with them.

98.    As set forth above, Plaintiff was experiencing complications and severe pain due to her untreated cluster headaches; her blood pressure and pulse were dangerously out of range and abnormally high; and her documented cardiovascular conditions, including POTS (post orthostatic tachycardia syndrome) and venous insufficiency, were discussed and documented during her visit to Malta Med Emergent Care.

99.    Nevertheless, these Defendants failed to meet the stabilization requirement of EMTALA by escorting Plaintiff off hospital premises after an emergency medical condition was found to exist without first stabilizing the Plaintiff's condition or transferring the Plaintiff to another facility.

100.    Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## COUNT VI

## MEDICAL MALPRACTICE (NEGLICENCE)
### (Against Defendant Braiman, the Hospital Defendants, and Defendant Calistri)

101.    Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

102.    Defendants Dr. Braiman, Glens Falls Hospital, and Albany Med breached the applicable standard of care due to Plaintiff as their patient by denying Plaintiff medical treatment on the basis of age and sex, failing to consider Plaintiff's wish not to have children, deprioritizing Plaintiff's safety, failing to respect Plaintiff's choice not to have children, and encouraging Plaintiff not to get an abortion in the event of pregnancy.

103.    As set forth above, during Plaintiff's September 14, 2022, appointment with Dr. Braiman regarding treatment for cluster headaches, the only treatments Dr. Braiman was willing to prescribe were those that Plaintiff had already told Dr. Braiman she had tried and failed.

104.    Dr. Braiman subsequently sent in an injectable medication (Aimovig) to Plaintiff's pharmacy without her consent or discussing the risks and benefits of the medication, and which she therefore returned to the pharmacy.

105.    On September 21, 2022, Plaintiff experienced complications due to the untreated cluster headaches, requiring her to seek additional medical treatment at Defendant Malta Med Emergent Care.

106.    Defendants Calistri and Malta Med Emergent Care, Saratoga Hospital, and Albany Med breached the applicable standard of care due to Plaintiff as their patient by discontinuing the medication Calistri previously ordered for Plaintiff and forcibly discharging Plaintiff from Malta Med Emergent Care, without stabilizing Plaintiff's headache pain or elevated blood pressure and pulse.

107.    As a result of these actions and inactions by Dr. Braiman, Calistri, and the Hospital Defendants, Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## COUNT VII

### NEGLIGENCE PER SE
### (Against Defendants Malta Med Emergent Care, Saratoga Hospital, and Albany Med)

108.    Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

109.    Plaintiff, as a person needing medical treatment, is among the class of people for whom the EMTALA was intended by the enacting legislature to benefit.

110.    The violation(s) of the EMTALA by Defendants Malta Med Emergent Care, Saratoga Hospital, and Albany Med, as set forth above, amounts and gives rise to negligence per se.

111.    Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief as the Court deems just and proper.

## COUNT VIII

### BREACH OF CONFIDENTIALITY
### (Against the Hospital Defendants and Defendants Calistri, West, and Kirker)

112.    Plaintiff re-alleges and incorporates every allegation in this Complaint as if fully set forth herein.

113.    The Hospital Defendants, through Defendants Kirker, West, and Calistri, breached Plaintiff's confidentiality by improperly, knowingly, recklessly, and with malicious intent

accessing her confidential information and using such protected information to make and pursue false allegations against Plaintiff to get her thrown out of an emergency room mid-treatment.

114.    Plaintiff has suffered the psychological, physical, and financial injuries described above. Plaintiff accordingly seeks compensatory damages in an amount to be determined at trial, plus such other and further relief pled and as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

A.    Compensatory damages in an amount to be determined at trial for:

    a. Past and future medical expenses;

    b. Emotional distress, psychological trauma, and mental anguish;

    c. Damage to reputation and standing in the community; and

    d. Pain and suffering resulting from inadequate medical care.

B.    Declaratory judgment;

C.    Enjoin the Hospital Defendants from implementing or enforcing any policy, procedure, or practice that denies access to and full and equal enjoyment of Defendants' facilities, services or programs under the ACA and NYSHRL;

D.    Order the Hospital Defendants to properly train its staff and employees about the rights of patients to be free from discrimination and/or retaliation under the ACA and NYSHRL;

E.    Nominal Damages;

F.    Reasonable attorneys' fees and costs;  and

G.    Any and all punitive and/or statutory damages to which Plaintiff may be entitled;

H.      Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 13, 2025                    Respectfully submitted,

                                            */s/ Reyna Lubin*
                                            Reyna Lubin
                                            rlubin@eandblaw.com
                                            EISENBERG & BAUM, LLP
                                            24 Union Square East, PH
                                            New York, NY 10003
                                            212-353-8700 (tel.)
                                            212-353-1708 (fax)
                                            *Attorneys for Plaintiff*